UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARLES PLACE ASSOCIATES
Plaintiff

v. **C.A. No.: 07-368 S**

CARRIER CORPORATION
Defendant

PLAINTIFFS' STATEMENT OF THE CASE PURSUANT TO Fed R. Civ. P. 16

Introduction

In accordance with this court's pretrial conference notice, plaintiff, Charles Place Associates ("Charles Place") presents this Statement of the Case, identifying legal issues that may arise to the extent that they are currently known.[1]

Factual Background

As noted in the complaint, in October, 2002, Charles Place is a residential facility located at 460 Charles Street, Providence that has participated in U.S. Department of Housing and Urban Development ("H.U.D.") programs and financing since approximately 1972.

From the beginning of its existence and for many years thereafter, Charles Place received its electrical power form the commercial power "grid". Acting through sales representatives, Carrier Corporation ("Carrier") discussed an alternative power supply with representatives of Charles Place during 2005. The system that they suggested was called a "Combined Power, Heat and Chilled Water System" that would operate on natural gas and purportedly significantly reduce costs while providing continuous electrical power, heat and cooling essential to the daily operation of Charles Place.

Throughout these discussions, Carrier's representatives were reminded that this was a H.U.D. project, that H.U.D. would be called upon to provide financing that the residents of Charles Place included disabled individuals, and that remaining connected to the "grid" on even a standby basis would not be economically feasible as it would exceed $75,000 per year. Carrier's representatives were shown the 460 Charles Street premises and acknowledged that they understood these requirements and concerns.

[1] "Charles Place" is also the name by which the residential property at 460 Charles Street, Providence, Rhode Island is commonly known. Therefore, references to "Charles Place" apply to the partnership and, in some instances, to the premises.

Carrier's representatives proclaimed that its "cogeneration system" was something that could "run continuously and uninterrupted" and would never have to be shut down since its component units could be taken offline (be disconnected) one at a time for any necessary maintenance. They also advised Charles Place that this system could operate "like an island" and be totally "independent of the grid". This is the same type representation that Carrier and its parent corporation, United Technologies Corporation ("U.T.C.") have "touted" while asking Congress for tax benefits (see copy of House Committee on Ways and Means presentation at Exhibit "A").

Out of an abundance of what it thought to be caution, Charles Place decided to purchase both the cogeneration system and two additional units so that there would be no need to have an "emergency generator" or a "backup connection" to the commercial "grid". On or about July 12, 2005, Carrier submitted its quotation for this system in the sum of $1,958,000.00. A copy appears at Exhibit "B".

Charles Place clearly advised Carrier that H.U.D. would be financing the project and that Charles Place was required to give H.U.D. and accurate presentation concerning the system that was being proposed. Based upon Carrier's representations, that process proceeded and resulted in H.U.D.'s approval and funding of a Construction Contract, a copy of which appears at Exhibit "C". The contract covered other work in addition and related to the Carrier cogeneration system and identified Charles Place Associates as the owner of the facility and the Naples Holding Corp. ("Naples") as general contractor for the project.[2]

As also noted in the complaint, the cogeneration system was placed into operation at the Charles Place premises but did not perform as promised. Moreover, Carrier has now presented (and in its "reserved counterclaim" discussion apparently seeks payment for a ServicePlus Maintenance contract that under the circumstances seems unconscionable. Until a counterclaim is actually filed, Charles Place will reserve further response but does note that the billings and service contract appear to be executed between Carrier and Charles Place (Exhibit "D").

<u>Elements of Claims And Relevant Authorities</u>

Charles Place has presented claims in various alternatives due to the nature of this series of transactions and the responsibilities that it has towards H.U.D. and its tenants.

---

[2] Your undersigned counsel for the plaintiff formally notified H.U.D. of the pendency of this action on October 12, 2007. Furthermore, Charles Place has authorized the undersigned to respond to any questions that H.U.D. may have concerning this action and the underlying dispute(s).

**Count One (Specific Performance)**

Preliminarily, although Carrier contends that it contracted with Naples Holding Corp., this argument is fallacious in that it is clear beyond any doubt that Naples was, at best, the agent of a disclosed principal (Charles Place). There is no suggestion (of which Charles Place is aware) that Naples Holding acted in any way other than as General Contractor, nor that it failed to disclose its agency and the identity of its principal or engaged in any manner of misrepresentation. Therefore, its acts were those of Charles Place.

The claim for Specific Performance requires that Charles Place demonstrate that (a) it entered into a contract or agreement for the proper design, configuration and installation of a cogeneration system compliant with all representations and performance criteria made and furnished by Carrier, (b) that the system does not materially comport with those characteristics, and that (c) if monetary damages cannot cure or rectify the contractual default by Carrier, the defendant should be compelled to specifically perform its agreement and representations in every respect.

**Count Two (Breach of Express Warranty)**

The elements necessary to this count are statutory as provided in R.I.G.L. § 6A-2-105 and 313, thus Charles Place must establish (a) that Carrier made affirmative, material representations as described in the Verified Complaint, (b) that such representations became a material basis of the bargain and thus created an express warranty that the cogeneration system would conform to such affirmation or promise, (c) no subsequent course of dealing, conduct or written exclusions have limited or modified these affirmations and promises, (d) Carrier has failed to comply with such affirmations or promises, and that (e) Charles Place has suffered damages.

**Count Three (Breach of Implied Warranty)**

The elements necessary to this count are statutory as provided in R.I.G.L. §6A-2-105 and 315, in addition to which Charles Place must establish that (a) Carrier had reason to know the exact and particular purpose for which its cogeneration system was intended, (b) knew that Charles Place was relying on Carrier's skill or judgment to select a suitable system (this was apparently the first such system installed in Rhode Island), that (c) this became a material basis of the contract or bargain into which the parties entered, that (d) Carrier failed to provide a system that was reasonably fit for the purposes for which Charles Place furnished the system, and (e) this has resulted in damages to Charles Place.

Furthermore, Carrier is responsible to H.U.D. and to all employees, staff, tenants and/or visitors to the Charles Place premises for any damages that they sustain since these are among those persons or entities that may reasonably be expected to be affected by the goods and breach of warranty by Carrier pursuant to R.I.G.L.§ 6A-2-318.

**Count Four (Negligence)**

The elements of proof required for this count are that (1) Carrier owed Charles Place the duty to perform one or more of the six things described in paragraph 54 of the Verified Complaint, (b) Carrier failed or refused to perform one or more of such things, and (c) that this has resulted in damages to Charles Place.

**Count Five (Promissory or Equitable Estoppel)**

The elements of proof required by this count are that (1) Carrier made promises that it knew or should have known would induce reliance by Charles Place, (2) Charles Place relied upon those promises and entered into contracts with Carrier, (3) Carrier failed to keep its promises, and (4) Charles Place has sustained damages as a result.

**Count Six (Common Law Fraud)**

This count is based upon fraud in the inducement of the contract. The elements necessary to prove this count seem to be (1) a material misrepresentation by Carrier or its agents (2) resulting in reliance upon the same by Charles Place, (3) inducing Charles Place to enter into an agreement or contract to which it would not have agreed had all material facts been known, and (4) Charles Place has suffered damages as a result of the same.

**Merger and Parole Evidence**

Carrier apparently contends that all prior discussions and representations to which Charles Place alludes in its several counts were "merged" into a contract with Naples Holding Corp. Therefore, it argues that the parole evidence rule bars evidence essential to the success of claims made by Charles Place. This position is incorrect and misplaced.

If one is induced to enter into a contract based upon a fraudulent statement from the other party to the contract, then the party who has been fraudulently induced is not bound by the contract. Moreover, a party may invoke a claim of fraud in the inducement, even if he or she was negligent in failing to read the contract. See Carlsten v. Oscar Gruss & Son, Inc., 853 A.2d 1191 (R.I. 2004) quoting Bjartmarz v. Pinnacle Real Estate Tax Service, 771 A.2d 124 (R.I. 2001).

Respectfully submitted,
Plaintiff, by counsel:

__/s/ John B. Reilly__ ___________

John B. Reilly (#1811)
John Reilly & Associates
100 North Main Street
Providence, R.I. 02903
(401) 272-2800
(Fax) 272-2811

**CERTIFICATION**

I hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 17, 2007 ___/s/ John B. Reilly, Esq.____