CARRIER CORPORATION
TERMS AND CONDITIONS OF SALE – SERVICE

1. **PAYMENT AND TAXES--** Payment shall be made 1.25% 10/net 30 days from date of invoice. Carrier reserves the right to require cash payment or other alternative method of payment prior to completion of work if Carrier determines, in its sole discretion, that Customer or Customer's assignee's financial condition at any time does not justify continuance of the net 30 days payment term. In addition to the Agreement price, the Customer shall pay Carrier any applicable taxes or government charges that may be required in connection with the service or material furnished under this Agreement.
2. **WORKING HOURS–** All services performed under this Agreement including major repairs, are to be provided during Carrier's normal working hours unless otherwise agreed.
3. **ADDITIONAL SERVICE-** Services or parts requested by Customer in addition to those specified in this Agreement will be provided upon receipt of Customer's written authorization and invoiced at Carrier's prevailing labor rates and parts charges. Additional services or parts shall be supplied under the terms of this Agreement.
4. **EXCLUSIONS–** Carrier is not responsible for items not normally subject to mechanical maintenance including but not limited to: duct work, casings, cabinets, fixtures, structural supports, grillage, water piping, steam piping, drain piping, cooling tower fill, boiler tubes, boiler refractory, disconnect switches and circuit breakers. Carrier is not responsible for repairs, replacements, alterations, additions, adjustments, repairs by others, unscheduled calls or emergency calls, any of which may be necessitated by negligent operation, abuse, misuse, prior improper maintenance, vandalism, obsolescence, building system design, damage due to freezing weather, chemical/electrochemical attack, corrosion, erosion, deterioration due to unusual wear and tear, any damage related to the presence of mold, fungi, mildew, or bacteria, damage caused by power reductions or failures or any other cause beyond Carrier's control.
   Carrier is not responsible for the identification, detection, abatement, encapsulating or removal of asbestos, products or materials containing asbestos, similar hazardous substances, or mold, fungi, mildew, or bacteria. In the event that Carrier encounters any asbestos product or any hazardous material in the course of performing its work, Carrier may suspend its work and remove its employees from the project, until such product or material, and any hazards connected with it are abated. Carrier shall receive an extension of time to complete its work and compensation for delays encountered as a result of such situation and its correction.
   Carrier shall not be required to perform tests, install any items of equipment or make modifications that may be recommended or directed by insurance companies, government, state, municipal or other authority. However, in the event any such recommendations occur, Carrier, at its option, may submit a proposal for Customer's consideration in addition to this Agreement. Carrier shall not be required to repair or replace equipment that has not been properly maintained.
5. **WARRANTY–** Carrier warrants that all service provided under this Agreement shall be performed in a workmanlike manner. Carrier also warrants all Carrier parts or components supplied hereunder to be free from defects in material and workmanship. For parts or components determined to be defective within one year from date of installation or before the termination date of this Agreement, whichever is earlier, and in the case of service, determined to be defective within ninety (90) days of completion of that service, Carrier shall at its option repair, replace, or issue a credit, for any such parts, components or service, provided they were not damaged, abused, or affected by chemical properties. Any claim for defective workmanship must be provided to Carrier in writing. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Carrier's obligations to repair, replace, or issue credit for any defective parts, components or service shall be Customer's exclusive remedy.
6. **PROPRIETARY RIGHTS–** During the term of this Agreement and in combination with certain services, Carrier may elect to install, attach to Customer equipment, or provide portable devices (hardware and/or software) that shall remain the personal proprietary property of Carrier. No devices installed, attached to real property or portable device(s) shall become a fixture of the Customer locations. Customer shall not acquire any interest, title or equity in any hardware, software, processes, and other intellectual or proprietary rights to devices that are used in connection with providing service on Customer equipment.
7. **DELAYS–** Delays caused by conditions beyond the reasonable control of either party shall not be the liability of either party to this Agreement.

8. **CUSTOMER RESPONSIBILITIES–** Customer shall:
   - Provide safe and reasonable equipment access and a safe work environment.
   - Permit access to Customer's site, and use of building services including but not limited to: water, elevators, receiving dock facilities, electrical service and local telephone service.
   - Keep areas adjacent to equipment free of extraneous material, move any stock, fixtures, walls or partitions that may be necessary to perform the specified service.
   - Promptly notify Carrier of any unusual operating conditions.
   - Upon agreement of a timely mutual schedule, allow Carrier to stop and start equipment necessary to perform service.
   - Provide adequate water treatment.
   - Provide the daily routine equipment operation (if not part of this Agreement) including availability of routine equipment log readings.
   - Where Carrier's remote monitoring service is provided, provide and maintain a telephone line with long distance direct dial and answer capability.
   - Operate the equipment properly and in accordance with instructions.
   - Promptly address any issues that arise related to mold, fungi, mildew or bacteria.
9. **EQUIPMENT CONDITION & RECOMMENDED SERVICE–** Upon the initial scheduled operating and/or initial annual stop inspection, should Carrier determine the need for repairs or replacement, Carrier will provide Customer in writing an 'equipment condition' report including recommendations for corrections and the price for repairs in addition to this Agreement.
   In the event Carrier recommends certain services (that are not included herein or upon initial inspection) and if Customer does not elect to have such services properly performed in a timely fashion, Carrier shall not be responsible for any equipment or control failures, operability or any long-term damage that may result. Carrier at its option will either continue to maintain equipment and/or controls to the best of its ability, without any responsibility, or remove such equipment from this Agreement, adjusting the price accordingly.
10. **CUSTOMER TERMINATION–** Customer shall have the right to terminate this Agreement for Carrier's non-performance provided Carrier fails to cure such non-performance within 30 days after having been given prior written notice of the non-performance. Upon early termination or expiration of this Agreement, Carrier shall have free access to enter Customer locations to disconnect and remove any Carrier personal proprietary property or devices as well as remove any and all Carrier-owned parts, tools and personal property. Additionally, Customer agrees to pay Carrier for all incurred but unamortized service costs performed by Carrier including overheads and a reasonable profit.
11. **CARRIER TERMINATION–** Carrier reserves the right to discontinue its service any time payments have not been made as agreed or if alterations, additions or repairs are made to equipment during the term of this Agreement by others without prior agreement between Customer and Carrier.
12. **LIMITATION OF LIABILITY–** Under no circumstances shall Carrier be held liable for any incidental, special or consequential damages, including loss of revenue, loss of use of equipment or facilities, or economic damages based on strict liability or negligence. Carrier shall be liable for damage to property, other than the equipment provided under this Agreement, and to persons, to the extent that Carrier's negligent acts or omissions directly contributed to such injury or property damage. Carrier's maximum liability for any reason (except for personal injuries) shall consist of the refunding of all moneys paid by Customer to Carrier under this Agreement, subject to right of removal and return of equipment provided under this Agreement to Carrier.

13 **WASTE DISPOSAL–** Customer is wholly responsible for the removal and proper disposal of waste oil, refrigerant and any other material generated during the term of this Agreement.

14. **CLAIMS–** Any suits arising from the performance or non-performance of this Agreement, whether based upon contract, negligence, strict liability or otherwise, shall be brought within one (1) year from the date the claim arose.
15. **GOVERNMENT PROCUREMENTS-** Carrier offers standard commercial items that may not comply with Government specifications. Carrier does not comply with the Cost Accounting Standards (CAS) or with the Federal Acquisition Regulations (FAR). In no event shall Carrier provide any Cost or Pricing Data in connection with this Agreement or subsequent modifications.
16. **SUPERSEDURE, ASSIGNMENT and MODIFICATION-** This Agreement contains the complete and exclusive statement of the agreement between the parties and supersedes all previous or contemporaneous, oral or written, statements. Customer may assign this Agreement only with Carrier's prior written consent. No modification to this Agreement shall be binding unless in writing and signed by both parties.