**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHARLES PLACE ASSOCIATES | : | |
| | : | |
| v. | : | C.A. No. 07-368 S |
| | : | |
| CARRIER CORPORATION, individually and doing business as "CARRIER COMMERCIAL SERVICE, a Division of Carrier Corporation" and UNITED TECHNOLOGIES COMPANY, Individually and doing business as "UTC Power, A United Technologies Company" | : | |

# DEFENDANTS' ANSWER TO AMENDED COMPLAINT, COUNTERCLAIM AND CLAIM OF JURY TRIAL

## FIRST DEFENSE

1. Admitted.

2. Denied for insufficient knowledge.

3. Denied for insufficient knowledge.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted that United Technologies Corporation, improperly identified as "United Technologies Company," is a Delaware corporation with a principal place of business in Connecticut and a subsidiary, UTC Power Corporation.

8. Denied for insufficient knowledge.

9. Admitted.

10. Denied for insufficient knowledge.

11. Denied for insufficient knowledge.

12. Denied for insufficient knowledge.

13. Denied for insufficient knowledge.

14. Denied for insufficient knowledge.

15. Denied

16. Admitted.

17. Denied for insufficient knowledge.

18. Denied.

19. Denied.

20. Denied.

21. Admitted.

22. Admitted.

23. Denied for insufficient knowledge.

24. Denied.

25. Denied.

26. Denied for insufficient knowledge.

27. Denied.

28. Denied for insufficient knowledge.

29. Denied for insufficient knowledge.

30. Denied.

31. Denied.

32. Denied.

33. Denied for insufficient knowledge.

34. Denied.

35. Denied for insufficient knowledge.

36. Admitted.

37. Denied.

38. Admitted.

39. Denied. Carrier is not responsible for supplying an emergency generator but did so in once instance as an accommodation to its customer.

40. Admitted.

41. Admitted that the work took approximately two hours longer than originally expected. The remaining allegations are denied.

42. Denied.

43. Denied.

44. Denied for insufficient knowledge, except that defendants admit that Mr. Guyder attended the meeting and agreed to attempt to facilitate coordination of a plan for electrical connection with National Grid because National Grid considered the existing electrical plan drawn by Multi-State Electric to be insufficient.

45. Admitted.

46. Denied

47. Admitted that Carrier and/or UTC had been asked to assist plaintiff's consultants with technical questions raised. The remaining allegations are denied, except that defendants admit that, because National Grid was dissatisfied with the proposed electric interconnect pursuant to plans provided by Multi-State Electric, it would attempt to facilitate a solution by exploring other options. This became necessary because plaintiff corporation refused to purchase the generator that was required pursuant to its plans and Carrier Corporation sought to assist its customer in facilitating

an interconnect that was acceptable to National Grid in order to provide back-up emergency electrical power. Carrier Corporation interacted with National Grid pursuant to implied authority granted to it at the time that plaintiff accepted Carrier's offer to facilitate an interconnect because of existing problems raised by National Grid with respect to plaintiff's electrical plans prepared by Inter-State Electric.

48. Denied for insufficient knowledge, except that defendants expressly deny that Carrier or UTP had taken any unauthorized action. Denied for insufficient knowledge as to when plaintiff's electrical consultant first received copies of any proposed plan or revision.

49. Denied for insufficient knowledge and expressly denied that the only DMC available was insufficient to properly work with loads generated at Charles Place project.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

**COUNT ONE**

56. Denied.

57. Denied.

58. Denied.

59. Denied.

**COUNT TWO**

60. Denied. Calls for a legal conclusion.

61. Denied.

62. Denied.

63. Denied. Calls for a legal conclusion.

64. Denied.

**COUNT THREE**

65. Denied. Calls for a legal conclusion.

66. Denied

67. Denied.

68. Denied.

69. Denied.

**COUNT FOUR**

70. Denied.

71. Denied.

72. Denied.

**COUNT FIVE**

73. Denied.

74. Denied.

75. Denied for insufficient knowledge.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

## COUNT SIX

80. Denied.

81. Denied.

DEFENDANTS DEMAND JUDGMENT IN THEIR FAVOR FOR ALL RELIEF SOUGHT BY PLAINTIFF.

## SECOND DEFENSE

Plaintiff's action should be dismissed because plaintiff does not have a contract with defendants, Carrier Corporation or United Technologies Corporation. To the contrary, "Naples Holding Corporation", by and through H. Charles Tapalian, entered into a contract with Carrier Commercial Systems and Services, a division of Carrier Corporation, on or about July 25, 2005.

## THIRD DEFENSE

Carrier Commercial Systems and Services, a division of Carrier Corporation, entered into a contract with "Naples Holding Corporation" on or about July 25, 2005. Paragraph 16 of the Agreement provided in part:

> Customer may assign this Agreement only with Carrier's prior written consent. No modification to this Agreement shall be binding unless in writing and signed by both parties.

Plaintiff's action should be dismissed because at no time did Naples Holding Corporation assign its rights pursuant to the contract to plaintiff with Carrier Corporation's prior written consent.

## FOURTH DEFENSE

Plaintiff's allegations relating to oral representations and/or statements made prior to execution of the contract are irrelevant, immaterial and inadmissible in that the contract executed by Carrier Corporation on July 25, 2005, with Naples Holding Corporation provides:

> 16. SUPERSEDURE. ASSIGNMENT and MODIFICATION.

This Agreement contains the complete and exclusive statement of the agreement between the parties and supersedes all previous or contemporaneous oral and written statements.

**FIFTH DEFENSE**

Plaintiff's allegations relating to the terms and conditions and/or statements or warranties are irrelevant, immaterial and inadmissible in that the contract executed by Carrier Corporation on July 25, 2005, with Naples Holding Corporation provides:

6. WARRANTY:

Carrier warrants that all service provided under this agreement shall be performed in a workmanlike manner. Carrier also warrants all Carrier parts or components supplied hereunder to be free from defects in material and workmanship. For parts or components determined to defective within one year from the date of installation or before the termination date of this Agreement, whichever is earlier, and in the case of service, determined to be defective within ninety (90) days of completion of that service, Carrier shall at its option, repair, replace or issue credit for any such parts or components or service, provided they were not damaged, abused, or affected by chemical properties. Any claim for defective workmanship must be provided to Carrier in writing. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Carrier's obligations to repair, replace, or issue credit for any defective parts, components or service shall be Customer's exclusive remedy.

**SIXTH DEFENSE**

Plaintiff's allegations relating to the terms and conditions of the contract are irrelevant, immaterial and inadmissible in that the contract executed by Carrier Corporation on July 25, 2005, with Naples Holding Corporation provides:

8. CUSTOMER RESPONSIBILITIES –Customer shall:
    - Promptly notify Carrier of any unusual operating conditions.
    - Upon agreement of a timely mutual schedule, allow Carrier to stop and start equipment necessary to perform service.
    - Operate the equipment properly and in accordance with

Instructions.

**SEVENTH DEFENSE**

Plaintiff's allegations relating to the terms and conditions of the contract are irrelevant, immaterial and inadmissible in that the contract executed by Carrier Corporation on July 25, 2005, with Naples Holding Corporation provides:

> 12. LIMITATION OF LIABILITY--.
> Under no circumstances shall Carrier be held liable for any accidental, special or consequential damages, including loss of revenue, loss of use of equipment or facilities, or economic damages, based on strict liability or negligence. Carrier shall be liable for damage to property, other than equipment provided under this Agreement, and to persons, to the extent that Carrier's negligent acts or omissions directly contributed to such injury or property damage. Carrier's maximum liability for any reason (except for personal injuries) shall consist of the refunding of all moneys paid by Customer to Carrier under this Agreement, subject to right of removal and return of equipment provided under this Agreement to Carrier.

**EIGHTH DEFENSE**

The contract executed on July 25, 2005 with Naples Holding Corporation, provides:

**Work By Others:**

> All labor and materials for electrical power wiring, control wiring any other electrical work to be performed by others.
>
> The quoted price includes labor, (on a straight time basis), material, transportation, tools and supervision as outlined. **Only the items listed above are included in the price as quoted. Any additional work, if required, would be performed only upon your authorization and bill in addition to the quoted price**. Material furnished by Carrier will be supplied in accordance with the contractual re-quirements. Prices quoted do not include any sales, excise or similar taxes, it being understood that any which may apply will be added at cost.

**NINTH DEFENSE**

Defendants deny any breach of duty legally owed to plaintiff.

**TENTH DEFENSE**

Defendants deny that any act or omission on their part was the proximate cause of any damage to plaintiff.

**ELEVENTH DEFENSE**

Plaintiff's own conduct was the proximate cause of any alleged damage or inconvenience.

**TWELFTH DEFENSE**

Plaintiff alleges entitlement to goods, services and products that were not within the scope of the contract executed by Naples Holding Corporation on or about July 25, 2005.

**THIRTEENTH DEFENSE**

Defendants affirmatively plead failure of consideration.

**FOURTEENTH DEFENSE**

Defendants affirmatively plead waiver.

**FIFTEENTH DEFENSE**

Defendants affirmatively plead estoppel.

**SIXTEENTH DEFENSE**

The products purchased by Naples Holding Corporation, on information and belief, may have been put to an unusual and unintended use.

**SEVENTEENTH DEFENSE**

Plaintiff's action is barred by plaintiff's failure to comply with the provisions of G.L. §6A-2-101 et seq.

**EIGHTEENTH DEFENSE**

The contract executed by Naples Holding Corporation on July 25, 2005, was at all times subject to the provisions of G.L. §6A-2-316, the Uniform Commercial Code.

**NINETEENTH DEFENSE**

Defendants affirmatively plead plaintiff's failure to comply with the provisions of G.L. §6A-2-602.

**TWENTIETH DEFENSE**

Defendants affirmative plead plaintiff's failure to comply with the provisions of G.L. §6A-2-605.

**TWENTY-FIRST DEFENSE**

Defendants affirmatively plead plaintiff's failure to comply with the provisions of G.L. §6A-2-606.

**TWENTY-SECOND DEFENSE**

Plaintiff has failed to provide reasonable notice of an alleged breach pursuant to the provisions of G.L. §6A-2-607, the Uniform Commercial Code.

**TWENTY-THIRD DEFENSE**

Defendants affirmatively plead plaintiff's failure to assert a warranty claim within the terms of the warranty.

**TWENTY-FOURTH DEFENSE**

Defendants affirmatively plead plaintiff's failure to commence action with the applicable period of limitation set forth in the contract as follows:

> 14. CLAIMS—Any suits arising from performance or non-performance of this Agreement, whether based on contract, negligence, strict liability or otherwise shall be brought within one (1) year from the date the claim arose.

**COUNTERCLAIM**

For its counterclaim against plaintiff as the alleged disclosed principal of Naples Holding Corporation with whom defendant Carrier Corporation contracted for purchase and sale of the equipment and services, defendant Carrier Corporation states its counterclaim as follows:

**COUNT I**
**BREACH OF CONTRACT**

1. Carrier Corporation entered into a contract on or about July 25, 2003 with Naples Holding Corporation which was on information and belief owned and operated by H. Charles Tapalian as principal. Nevertheless, plaintiff, Charles Place Associates, a Rhode Island limited partnership, now alleges that it was the disclosed principal of Naples Holding Corporation for purposes of the sale and delivery of the equipment pursuant to the terms of the contract.

2. In addition to the contract for the purchase and sale of equipment dated July 25, 2003, defendant/counterclaimant, Carrier Corporation, also entered into a Service Contract (a copy of which is attached hereto as Exhibit A) on or about May 15, 2007, originally intended to be executed by Naples Holding Corporation but executed by H. Charles Tapalian as general partner of Charles Place Associates on or about May 23, 2007.

3. Upon execution of the Service Contract, Carrier Corporation provided labor, materials and equipment to Charles Place Associates for the use and benefit of Charles Place Associates at its usual place of business.

4. Despite providing labor, materials and equipment pursuant to the terms of the Service Agreement with plaintiff, plaintiff has failed to pay Carrier Corporation for those services which is a material breach of the contract.

WHEREFORE, defendant Carrier Corporation demands judgment against the plaintiff , together with attorney's fees, interest and costs.

**COUNT II**
**RESCISSION**

1. Pursuant to the terms of the Service Contract, defendant/ counterclaimant, Carrier Corporation, reserves the right to discontinue service at any time payments have not been made as agreed. Plaintiff has failed and refused to make payments as required pursuant to the terms of the Service Contract. As a result, Carrier Corporation is rightfully entitled to discontinue service and rescind

the Service Agreement as the result of plaintiff's breach which is a material breach.

WHEREFORE, defendant Carrier Corporation demands judgment in its favor rescinding the Service Contract and declaring, pursuant to the provisions of Federal Rules of Civil Procedure, Rule 57, that Carrier Corporation is entitled to withdraw from all obligations to provide maintenance and service to plaintiff pursuant to the terms of the agreement of May 23, 2007.

/s/ John T. Walsh, Jr., Esq.
John T. Walsh, Jr. #0483
Attorney for Defendants,
Carrier Corporation and
United Technologies Corporation,
HIGGINS, CAVANAGH & COONEY, LLP
123 Dyer Street
Providence, RI 02903
401-272-3500
401-273-8780 (fax)
Jwalsh@hcc-law.com

**The defendants hereby demand a trial by jury.**

CERTIFICATE OF SERVICE

I, John T. Walsh, Jr., certify that on the 4th day of April 2008, a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record received notice of the filing of this document electronically from the United States District Court for the District of Rhode Island:

John B. Reilly #1811
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, RI 02903
jreilly@lawyers-online.us

/s/John T. Walsh, Jr., Esq.